**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JASON N. JOHNSON,

                                        Plaintiff,

            - v -                                              Civ. No. 9:08-CV-1013
                                                                       (GLS/RFT)

DAVID ROCK, *Superintendent, Great Meadow*
*Correctional Facility*; P. VANGUILDER, *Deputy of Security,*
*Great Meadow Correctional Facility,*

                                        Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

JASON N. JOHNSON
Plaintiff, *Pro se*
97-A-1431
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. ANDREW M. CUOMO                      ROGER W. KINSEY, ESQ.
Attorney General for the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Jason N. Johnson filed this civil rights Complaint, pursuant to 42 U.S.C. §§

1983, 1985, 1988, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42

U.S.C. § 2000-cc *et seq*., bringing the following claims: (1) interference with his freedom of

religious expression; (2) due process violations; and (3) conspiracy.  Dkt. No. 1, Compl.

        Presently before the Court is Defendants' Motion for Summary Judgment.  Dkt. No. 19.

Plaintiff opposes the Motion.  Dkt. No. 28.[1]  For the reasons that follow, it is recommended that Defendants' Motion be **granted**.

## I.  FACTS

The following facts were derived mainly from the Defendants' Statement of Material Facts, submitted in accordance with N.D.N.Y.L.R. 7.1, which were not specifically opposed by Plaintiff in their entirety.  *See* N.D.N.Y.L.R. 7.1(a)(3) ("<u>The Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert.</u>" (emphasis in original)).

The allegations in the Complaint relate to the period of September 11, 2007, through December 2007, during which time Plaintiff was incarcerated at the Great Meadow Correctional Facility ("Great Meadow").  Dkt. No. 19-4, Defs.' 7.1 Statement at ¶ 1.  On September 11, 2007, P. Roberts, a Psychiatric Assistant,[2] wrote a Misbehavior Report charging Plaintiff with violating Rules 101.20 (Lewd Behavior) and 106.10 (Disobeying a Direct Order).  *Id.* at ¶ 2.  In the Misbehavior Report, Roberts states that while she was talking to another inmate, she observed Plaintiff with his pants and underwear at his ankles, masturbating while looking at her from an adjoining cell.  *Id.* at ¶ 3.  Roberts stated that Plaintiff did not obey her direct order to stop his behavior.  *Id.*

Plaintiff was not present at a Tier III Disciplinary Hearing that was presided over by

---

[1] We note that Plaintiff's Response in Opposition to Defendants' Motion, dated February 26, 2010, was received on March 3, 2010, two days after it was due.  *See* Dkt. No. 26, Order, dated Jan. 27, 2010 (extending Plaintiff's response deadline for a third and final time to March 1, 2010).  Nonetheless, because Plaintiff is proceeding *pro se*, we will consider his untimely Response in addressing Defendants' Motion.

[2] P. Roberts is not a named Defendant in this action.

Lieutenant (Lt.) Juckett[3] on September 19, 2007. *Id.* at ¶ 5. At that hearing, Plaintiff was found guilty of the charges brought in the Misbehavior Report and received a sentence of six (6) months in the Special Housing Unit ("SHU") and a restricted diet for fourteen (14) days, consisting of nutriloaf and cabbage. *Id.* at ¶ 6. Plaintiff alleges that pursuant to N.Y. COMP. CODES R. & REGS. ("NYCRR"), tit. 7, § 254.6, he was entitled to a Mental Health/Intellectual Capacity Assessment before the hearing officer imposed any penalty at the hearing. *Id.* at ¶ 7; Compl. at ¶¶ 15 & 17.

By letter dated September 21, 2007, Defendant then-Acting Superintendent Vanguilder informed the Facility Health Services Director about Plaintiff's restricted diet, specifying that it begin on September 24, 2007, and end on October 9, 2007. Defs.' 7.1 Statement at ¶ 13 & Ex. G, Lt., dated Sept. 21, 2007. Plaintiff appealed the Tier III hearing disposition to the Commissioner on the following grounds: (1) the hearing officer failed to conduct a Mental Health/Intellectual Capacity Assessment; (2) an independent inquiry into the reasons for Plaintiff's alleged refusal to attend the hearing was not conducted; and (3) the author of the Misbehavior Report did not testify as to the validity of the report. *Id.* at ¶ 13 & Ex. H at p. 6, Pl.'s Appeal, dated Sept. 19, 2007. Nowhere in the appeal did Plaintiff raise an issue concerning his restricted diet. *Id.* On November 21, 2007, the hearing disposition was affirmed by Commissioner Brian Fischer.[4] *Id.* at ¶ 15 & Ex. I, Review of Sup't Hr'g, dated Nov. 21, 2007.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

---

[3] Lieutenant Juckett is not a named Defendant in this action.

[4] Commissioner Fischer is not a named Defendant in this action.

genuine issue as to any material fact and [the moving party] is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "'pleadings, depositions, answers to interrogatories, and admissions on file, together with [] affidavits, if any,'" that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set out specific facts showing [that there is ]a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment.  *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## B.  RLUIPA and First Amendment Claims

Plaintiff alleges his constitutional and statutory freedom of religious expression rights were violated because he was subjected to a restricted diet during the holy month of Ramadan and, therefore, did not receive halal meals in order to break his fasting.  *See* Compl.

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."[5] *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).  RLUIPA  provides that:

No government shall impose a substantial burden on the religious exercise of a

---

[5] RLUIPA was enacted in the wake of the Supreme Court's invalidation of the Religious Freedom Restoration Act of 1993 ("RFRA") in *City of Boerne v. Flores*, 521 U.S. 507 (1997), on the grounds that it exceeded Congress's power under section 5 of the Fourteenth Amendment.  RLUIPA "corrected the constitutional infirmity of RFRA by invoking federal authority under the Spending Clauses to reach any program or activity that receives federal financial assistance, thereby encompassing every state prison."  *Fluellen v. Goord*, 2007 WL 4560597, at *5 (W.D.N.Y. Mar. 12, 2007) (citations omitted).

> person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

Thus, Plaintiff can establish an RLUIPA violation by proving that the prison regulations constitute a "substantial burden" on his religious exercise without promoting a *compelling* governmental interest that is advanced through the *least restrictive means*. As such, RLUIPA places a much higher burden on defendants than does the First Amendment, which, as articulated in the case of *Turner v. Safely*, 42 U.S. 78 (1987) requires only that a burden be "reasonably related to legitimate penological interests," not the least restrictive means of protecting compelling governmental interests.

To prevail on an RLUIPA claim, a "prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006) (citation omitted). Once an RLUIPA plaintiff meets his burden of showing a substantial burden on his exercise of religion, the evidentiary burden shifts to the defendant, who must show that the regulation (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering such interest. 42 U.S.C. § 2000cc-2(b).

If a prisoner asserts a First Amendment violation based on a free exercise claim, a court must evaluate "1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; 2) whether the challenged practice of the prison officials infringes upon the religious belief; and 3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Orafan v. Goord*, 411 F. Supp. 2d 153, 161 (N.D.N.Y. 2006)

(citing *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)).

In relation to the first prong, "the sincerity analysis is required to distinguish between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Id.* (quoting *Patrick v. LeFevre*, 745 F. 2d 153, 157 (2d Cir. 1984) (internal quotation marks omitted)).  As for the second prong regarding infringement, it "may be analyzed similarly to the 'substantial burden' test under RLUIPA."  *Id.* (citing *Ford v. McGinnis*, 352 F.3d 582, 591-92 (2d Cir. 2003)).  Finally, in evaluating the third prong, the Supreme Court has stated that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987); *see also Brown v. Johnson*, 2003 WL 360118, at *4 (W.D.N.Y. Feb. 14, 2003) (holding this standard is applied to claims brought directly under the First Amendment); *Verdal v. Frantz*, 2002 WL 31309175, at *2 (N.D.N.Y. July 31, 2002).

In this case, Plaintiff alleges that his freedom to practice his Muslim faith was substantially burdened by the imposition of the restricted diet.  Defendants assert that Plaintiff's exercise of his faith was not substantially burdened because the nutriloaf he was served as part of the restricted diet was in fact halal, or blessed food.  Defs.' Mem. of Law at pp. 13-14.  In support of their Motion, Defendants provide a Declaration from Imam Abdul Kharir, DOCS's Ministerial Program Coordinator for the Islamic Faith Group, who states that the restricted diet "is, in fact halal. Therefore, [Plaintiff] was free to eat this food before sunrise and after sunset, just as he would be free to eat any other food that qualified as halal during that time."  Dkt. No. 19-2, Imam Abdul Kharir Decl., dated Dec. 18, 2008, at ¶ 4.  In addition, Imam Kharir states that "[i]f Mr. Johnson was unsure whether the restricted diet was halal, he could have either contacted the Imam at Great

-7-

Meadow or written to my office to determine whether it qualified as such."  *Id.* at ¶ 5.

Plaintiff does not challenge Imam Kharir's statement that the restricted diet constituted halal. Rather, Plaintiff argues that being forced to eat nutriloaf and cabbage was contrary to his *personal* and sincerely held religious beliefs, notwithstanding the fact that such food constituted halal and therefore could properly have been consumed under generally accepted Muslim practices.   As Plaintiff puts it, "[t]he 'opinion' of DOCS Muslim cleric should not 'trump' [his] own sincerely held religious belief."  Pl.'s Mem. of Law at p. 25.

Plaintiff is correct that RLUIPA protects "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).  Moreover, as Plaintiff notes, the Second Circuit has made clear that "any perceived lack of objective validity to [a plaintiff's] belief [does] not entitle defendants to judgment as a matter of law." *Ford v. McGinnis*, 352 F.3d 582, 591 (2d Cir. 2003).  However, RLUIPA "does not preclude inquiry into the sincerity of a prisoner's professed religiosity."  *Cutter v. Wilkinson*, 544 U.S. at 725 n.13.  Indeed, plaintiffs must still "show that the activity is a sincere exercise of religion even if the activity is not compelled by the religion."  *Bikur Cholim, Inc. v. Vill. of Suffern,* 664 F. Supp. 2d 267, 288 (S.D.N.Y. 2009) (internal quotation marks and citations omitted).

In this case, beyond his general references to the Islamic faith, Plaintiff has not explained what his beliefs are nor why the restricted diet substantially burdened his exercise of those beliefs. In his Complaint, Plaintiff states that

> during the Islamic holy month of Ramadan, Muslims can break their daily fast only with halal (Muslim blessed food).  Because of his sincerely held religious beliefs plaintiff was unable to consume the "Nutriloaf" and raw cabbage.  On information and belief, "Nutriloaf" and raw cabbage do not qualify as halal.  On information and belief, Islamic law holds that Ramadan, and the observance of such is mandated.

Compl. at ¶¶ 18-21.

Thus, Plaintiff's Complaint refers generally to the tenants of Islam; it is entirely devoid of any reference to personally held religious beliefs that are separate and distinct from traditional Muslim tenants and/or practices.  Only in his Response and Declaration in Opposition to Defendants' Motion does Plaintiff assert that his personal beliefs, which apparently do not follow traditional Muslim tenants and/or practices, forbade him from eating nutriloaf and cabbage.  *See* Pl.'s Decl. at ¶ 14.  But, Plaintiff does not explain what those beliefs are, nor why they compelled him to abstain from eating the food he was provided.

Given this glaring inconsistency and Plaintiff's complete failure to articulate his personally held beliefs, we find that Plaintiff has failed to meet his burden of showing that his professed religious beliefs are sincerely held.  *See Evans v. Albany County Corr. Facility*, 2009 WL 1401645, at \*8 (N.D.N.Y. May 14, 2009) (granting summary judgment on a prisoner's First Amendment claim after finding that the plaintiff failed to "allege[] or establish[] how receiving non-vegetarian meals infringed on his sincerely held religious beliefs." (citing *Benjamin v. Coughlin*, 905 F.2d 571, 580 (2d Cir. 1990)).  Moreover, we find that no reasonable jury could conclude otherwise.  *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (noting that on a motion for summary judgment "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff" (emphasis in original) (internal citations and quotation marks omitted)).

A second argument raised in Plaintiff's Declaration in Opposition to Defendants' Motion bears mention.  Plaintiff asserts that

> even if the declaration of Iman Khabir was true and the loaf may be eaten to break the daily fast during RAMADAN, Plaintiff is not permitted to hoard or hold on to any food items while in SHU.  Thus preventing him from eating it due to it being served during day light hours and him not being allowed to hold on to any food.

Pl.'s Decl. at ¶ 16.

Thus, Plaintiff argues, although he "refused to consume the loaf during RAMADAN," he could not have consumed it even if he considered it proper halal because it was served during daylight hours and he would not have been allowed to keep the food in his cell until after nightfall, when Muslims break fast during Ramadan. *Id.*

In making this secondary, "even if" argument based on hypothetical facts, Plaintiff catches himself coming and going. On the one hand, Plaintiff claims that he refused the nutriloaf pursuant to his personally held religious beliefs and, based on those beliefs, would not have consumed it even though it was in fact halal. On the other hand, Plaintiff asserts that even if he was willing to consume the nutriloaf, he would not have been able to do so because he could not have been allowed to keep it in his cell until after the sun went down. But, Plaintiff's principal argument is that his religious beliefs prevented him from eating the nutriloaf. Therefore, whether or not the nutriloaf was served at the appropriate time should be a non-issue for Plaintiff, whose alleged sincerely held religious beliefs would ostensibly prevent his consumption of the nutriloaf at any time. Moreover, we note that nowhere in his Complaint does Plaintiff assert that he was unable to eat the nutriloaf because of the time it was served. *See generally* Compl. Only now, in response to Defendants' Motion, does Plaintiff raise this issue, which is at once factually distinct from and antithetical to his original religious expression claim. *Cf. Hayes v. New York City, Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." (citing cases)).

Because Plaintiff has failed to meet his initial burden of demonstrating a sincerely held

religious belief under both RLUIPA and the First Amendment, summary judgment is appropriate for both of these claims. *See Odom v. Dixion*, 2008 WL 466255, at *6 (W.D.N.Y. Feb. 15, 2008) (noting that a showing of sincerity is a threshold requirement for any First Amendment or RLUIPA claim). Therefore, we recommend that these claims be **dismissed**.[6]

### C. Due Process Claims

Plaintiff asserts that his due process rights were violated during the course of the Tier III Disciplinary Hearing presided over by Lt. Juckett. Specifically, Plaintiff states that: (1) he was not given a Mental Health/Intellectual Capacity Assessment prior to the imposition of any penalties and (2) he was deprived the right to be present at the hearing. Compl. at ¶¶ 13 & 15-17.

Lt. Juckett is not a named Defendant in this action, and therefore, these due process claims could be properly be dismissed for lack of personal involvement on the part of any named Defendant. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

---

[6] Because we find Plaintiff's First Amendment and RLUIPA claims fail on their merits, we need not address Defendants' claims of lack of personal involvement and failure to exhaust.

Plaintiff filed an appeal of Lt. Juckett's disposition on these due process grounds, which was affirmed by the Commissioner.  Dkt. No. 19, Steven H. Schwartz, Esq., Affirm., Exs. H, Pl.'s Appeal, dated Sept. 23, 2007, & I, Appeal Decision, dated Nov. 21, 2007.  The record shows that Plaintiff sent a letter to Defendant Vanguilder, dated September 24, 2007, in which he complained about the restricted diet but did not raise any of the due process issues mentioned in his direct appeal to the Commissioner.  Pl.'s Resp., Attach., Lt., dated Sept. 24, 2007.  Plaintiff sent another letter, dated October 22, 2007, addressed to the "Superintendent of Great Meadow," in which he mentioned the lack of a mental health assessment.  *Id.*, Lt., dated Oct. 22, 2007.  Defendant Vanguilder responded to Plaintiff's October 22nd letter, stating that his disciplinary hearing-related "issues are more appropriately addressed in the appeals process.  Facility records do indicate that you filed an appeal in reference to this hearing, the hearing was affirmed by the Central Office staff."  *Id.*, Lt., dated Dec. 23, 2007.  Thus, neither Defendant played any role in Plaintiff's hearing, disposition, or appellate review.  Therefore, we recommend that these due process claims be **dismissed** for lack of personal involvement.  *See Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir. 2003) (holding that mere linkage in the prison chain of command does not create supervisory liability).

### D. Conspiracy

Plaintiff brings conspiracy claims pursuant to 42 U.S.C. §§ 1983 and 1985, accusing Defendants of conspiring against him "for the purpose of depriving plaintiff his right to the free exercise of his . . . sincerely held religious beliefs guaranteed [by] the First and Fourteenth Amendments to the Constitution."  Compl. at ¶ 43. However, we have already determined Plaintiff's constitutional claims to be without merit.  Absent an underlying constitutional injury, a civil rights conspiracy claim cannot survive.  *See Young v. County of Fulton*, 160 F.3d 899, 904 (2d Cir. 1998)

*-12-*

(noting that absent a "deprivation of a federal constitutional right, . . . there can be no civil rights conspiracy to deprive that right").  Therefore, it is recommended that Plaintiff's conspiracy claims be **dismissed**.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 19) be **GRANTED** and the Complaint (Dkt. No. 1) **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).


Date:   March 30, 2010
        Albany, New York


_____
RANDOLPH E. TREECE
United States Magistrate Judge

*-13-*